## CAPITOL STATE BANK vs. EVERETT LANE.

1. BANKS: *Liabilities. Draft. Demand and notice. Case in judgment.*
The bank had for collection a draft by Lane on Gibson, and received $60.40 in money, and a sight draft and a ten days' sight draft on B., in settlement of L.'s draft on G. B. paid one draft and accepted the other at ten days. Upon maturity the bank presented it to B. for payment, which was refused, and the bank did not cause the draft to be protested, so as to charge the drawer. *Held,* that the bank, by failing to have the draft protested, has become liable to L. for the amount of the draft. A bank which receives a note or bill for collection is bound to use due and proper diligence in making demand and giving notice and causing protests to be made, so as to hold all parties liable, and in default of such diligence the bank itself becomes responsible to the party who deposited the note or bill.

ERROR to the Circuit Court of *Hinds* County.

Hon. GEO. F. BROWN, Judge.

The facts in the case are very fully stated in the opinion of the court.

It is assigned for error:

1. The court erred in awarding judgment against said bank, and in not rendering judgment in favor of the bank.

2. In overruling motion for a new trial.

*Geo. L. Potter,* for plaintiff in error:

Upon the facts in the case Lane is not entitled to recover. Whether the bank was bound to cause protest and to give notice would depend upon the understanding of the immediate parties to the transaction. Gatlin & Gibson did not contemplate such a thing; if so, they waived it. The delivery of Lane's draft to Gibson was unauthorized, and it was conditional. Barrett neglected to pay, and Gibson still owes, the unpaid balance to Lane, and if the bank was liable for the delivery to Gibson of Lane's draft, this is not the cause of action sued on in this case. The draft for $56, fell due February 15, 1874. Over a year after, Lane ordered the bank to deliver it to his agent, March 19, 1875, and it was so delivered. Lane now holds that draft, and files it with his declaration. By thus appropriating this acceptance and depriving the bank of it Lane has waived all claim, if any he had, against the bank.

*Hemmingway & Harris,* for defendant in error.:

The bank is liable for the amount of the draft. The bank, having undertaken to collect the draft, is liable for any loss that results from its negligence. Morse on Banks and Banking, 34 ; 9 Wend., 46 ; 11 Wend., 473.

The bank should have presented the draft to Barrett for payment, upon maturity ; payment being refused, the bank should have given notice and required it to be protested for non-payment, so that Lane could have held the drawers bound ; but having neglected to do so, the result is that Lane has lost all the right and claim that he had on Gibson, and his damage is the amount of the draft, and for that amount the bank is liable to him.

CAMPBELL, J., delivered the opinion of the court.

About the first of the year 1874 Lane sent to the Capitol State Bank, for collection, his sight draft on C. C. Gibson for $372.65, afterwards credited by order of Lane with $200, leaving $172.65 due. The Capitol State Bank, which is located at Jackson, transmitted this draft to its correspondent at Magnolia, where Gibson lived, for collection, and $60.40 were paid on it by Gibson, and reported to the Capitol State Bank and remitted to Lane, and a sight draft by Gatlin & Gibson, a mercantile firm of which Gibson was a member, for $56.25, on one Barrett, at Jackson, favor of the cashier of Capitol State Bank, and a draft by same on same, favor of same, for $56, at ten days' sight, were received by the correspondent of the Capitol State Bank for the balance due on Lane's draft on Gibson, and Lane's draft was surrendered to Gibson, and the two drafts of Gatlin & Gibson on Barrett were forwarded by its correspondent to the Capitol State Bank, which collected the sight draft on Barrett and remitted proceeds to Lane, and Barrett accepted said other draft, but failed to pay it, and the Capitol State Bank did not cause said draft to be protested for non-payment, although payment thereof was duly demanded and not made, and was afterwards again demanded with like result.

Subsequently to this Gatlin & Gibson requested that this unpaid draft should be sent to the correspondent of the Capitol State Bank at Magnolia, in order that they might pay it, and it was so sent, but they did not pay it, and asked that it be returned to the Capitol State Bank for another presentation to Barrett, and it was so returned and again presented to Barrett, but it was not paid. On the 19th of March, 1875, Lane sent a written order to the Capitol State Bank to deliver to J. & T. Green "the draft drawn on Dr. Barrett by Gatlin & Gibson for $56, belonging to him," and, on presentation of that order, the said draft was delivered accordingly, and Lane sued the Capitol State Bank, in a justice's court, to recover, as damages, the principal and interest of said draft, because of the negligence of said bank in failing to cause said draft to be protested for non-payment, and notice to be given thereof to Gatlin & Gibson, the drawers, so as to charge them. The justice gave judgment for Lane, and the bank appealed to the circuit court, which also rendered judgment in favor of Lane, and this is here on writ of error.

This case, stated without circuity is simply this, viz. : The Capitol State Bank had for collection a draft by Lane on Gibson, and received $60.40 in money, and a sight draft and a ten days' sight draft on Barrett, in settlement of Lane's draft on Gibson, which was delivered to Gibson on receiving these things, and the bank collected the sight draft and procured the other to be accepted by Barrett, and, upon its maturity, presented it for payment, which was refused, and the bank did not cause the draft to be protested, but afterwards made efforts to collect it, but failed ; and finally, on request, delivered it to Lane, who seeks to recover from the bank what he assumes he would have recovered, or the bank would for him, of Gatlin & Gibson, the drawers, if the bank had taken the proper steps to charge them upon the non-payment of the draft by Barrett.

It would seem that to state the case is to decide it. "As a legal proposition it is undeniably true that a bank which

receives a note or bill for collection is bound to use due and proper diligence in making demand and giving notice and causing protest to be made, so as to hold all parties liable, and, in default of such diligence, the bank itself becomes responsible to the party who deposited the note or bill.'' 7 How., 451. This is not controverted; but it is said that the $56 draft on Barrett was not deposited for collection by Lane, and is not payable to him, but to the cashier of the bank, and has not been indorsed to him; and, besides this, that it was not received by the bank in payment of so much of Lane's draft on Gibson, but only conditionally, and if it was not paid it was to be no payment; and it is further said that Gibson still owes that much of his former indebtness to Lane, unaffected by the $56 draft. If all this be true it does not affect Lane's right to hold the bank responsible for a *failure to use its opportunity to charge Gatlin & Gibson, as drawers*, upon the dishonor of the draft by non-payment by Barrett. The just cause of complaint by Lane against the bank is that it undertook the collection of his draft on Gibson and received on settlement this $56 draft, and surrendered Lane's, and, when this draft was dishonored, did not take the necessary steps to charge Gatlin & Gibson, the drawers, whereby, it must be assumed, he would have got his money. But it is said there is no proof of the solvency of Gatlin & Gibson. If they were insolvent, and that would make a difference, the bank should have shown it. It is urged that as Lane called on the bank for this draft, and still holds it, and has filed it as evidence, he has precluded himself from asserting a claim against the bank for its failure to have the draft protested. We do not think so. According to part of the argument for the bank the draft still belongs to it, as it is payable to the cashier and has not been indorsed. Lane having recovered from the bank, it can avail itself of the dishonored draft and make what it can out of it. If it were shown that Lane, with a full knowledge of all the transactions, received the draft on Barret from the bank as a settlement of the matter, the case would be different; but, for all

that appears, he wanted the dishonored draft only as evidence, or it may be that until receipt of it he was not aware of the failure to protest it.

We have noticed the criticism of counsel on Lane's declaration (2) in the justice's court. We are disposed to look to the substance, rather than the form, of the statement of his cause of action by a plaintiff before a justice of the peace, and think it is sufficient in this case, and that the right of the plaintiff, Lane, to recover against the bank for the failure to cause the '$56 draft to be protested is distinctly asserted, and that is the gist of the action.

Our view of the case may be stated thus: The bank, by taking the $56 draft on Barrett and surrendering Lane's draft on Gibson, made the latter its own, and became liable to Lane for the $56. If it was agreed between the bank and Gibson that the $56 draft should be a payment of that amount on the draft of Lane on him only when the $56 draft should be paid, that is a matter between the bank and Gibson. Lane, by receiving from the bank the $56 draft, ratified the act of the bank in taking it as payment of the amount of it on the draft on Gibson, but did not thereby waive his right to complain that the bank did not, as it should have done, so deal with the $56 draft as to charge the drawers, who, in the absence of any showing at all, must be supposed to have been solvent. The bank is responsible to Lane, and is entitled to assert any right against Gibson which it may have by virtue of any agreement with him about the $56 draft as a payment of the Lane draft on him, or may pursue Barrett, as acceptor of the $56 draft. Bank v. Triplett et al., 1 Pet., 25; Bank v. Knox & Co., 1 Ala., 152.

Judgment affirmed.