Argued at Pendleton October 31, affirmed December 18, 1928.

# R. C. EDD *v.* WESTERN UNION TELEGRAPH COMPANY.

(272 Pac. 895.)

For appellant there was a brief over the name of *Mr. Charles W. Erskine,* with on oral argument by *Mr. Jay H. Upton.*

For respondent there was a brief over the names of *Mr. R. S. Hamilton, Messrs. Simon, Gearin, Humphreys & Freed* and *Mr. Francis R. Stark,* with an oral argument by *Mr. Edgar Freed.*

BELT, J.—This is an action to recover damages for failure of the defendant company to transmit money by telegraph. On March 11, 1925, the plaintiff telegraphed from Bend, Oregon, to his brother, Pete Edd, at Bemidji, Minnesota, requesting him to send by telegraph immediately the sum of $200. On the following day, after receiving notice from the defendant, plaintiff went to the telegraph office to receive the money expected from his brother. Through mistake the defendant paid to plaintiff $97.70, whereas it should have paid him $197.70, $2.30 being deducted as a charge for transmitting the money. Upon discovery of the mistake a few weeks later the defendant paid plaintiff the balance of $100 due him.

On account of the negligence of the defendant company as above stated, plaintiff, in his first cause of action, alleges special damages, as follows:

"IV.

"That the plaintiff was on the said 11th day of March, 1925, indebted to one Hal Montgomery for the purchase price of a Buick automobile in the sum of $225.00 which said amount was past due, and

under the terms of their said contract, the said Hal Montgomery had the right to take up, seize and possess said automobile and bar and foreclose plaintiff of all right and interest therein if said sum was not paid on demand, and the said Hal Montgomery had made said demand and was threatening to take up said automobile.

"V.

"That said plaintiff had no other property or assets from or by which he could raise or secure the amount of money needed and required and without the receipt of said sum of $197.70, aforesaid, he was unable to pay the past due indebtedness on said automobile and Hal Montgomery seized and confiscated said automobile immediately thereafter upon the failure of plaintiff to make said payments.

"VI.

"That the value of the equity of plaintiff in said automobile at said time was the sum of $1,605.00, and by reason of the failure of the defendant to transmit and deliver the sum in its hands for delivery, plaintiff lost all his right and interest in said automobile and was damaged thereby in the sum of $1,605.00."

As a basis for special damages in the second cause of action, plaintiff, after reiterating allegations relative to the failure of the defendant to pay him the proper amount of money, alleges, as a result thereof, he was deprived of the use of his automobile and was thereby "unable to secure a position which he was qualified to fill, namely, the superintendency of the manufacture of lath, and was damaged * * in the sum of $1,000."

Plaintiff did not allege nor ask for general damages.

The trial court sustained objection to the introduction of any testimony relative to the second cause

of action and at the conclusion of plaintiff's case in chief granted a motion for nonsuit as to the first cause. Plaintiff appeals.

■ The negligence of the defendant is admitted. The question for decision is: Are the damages alleged too speculative, uncertain and remote? It is the old and oft-vexed question of proximate cause. At the threshold of the case we must bear in mind that this is an action, by the sendee of an interstate telegram, to recover damages. Since the amendment by Congress in 1910 of the Interstate Commerce Act (36 U. S. Stat. 545; 4 Fed. Stats. Ann. (2 ed.), 337; 49 U. S. C. A., § 1), interstate telegraphic messages come within its scope and jurisdiction thereover is vested in the Interstate Commerce Commission. The common-law doctrine, as declared by the state courts, relative to the liability of telegraph companies in transmitting interstate messages, is no longer controlling. We must look to the rule as announced by the federal courts: *Waters* v. *Western Union Tel. Co.,* 194 N. C. 188 (138 S. E. 608); *Thos. G. Hardie & Co.* v. *Western Union Tel. Co.,* 190 N. C. 45 (128 S. E. 500); *Priester* v. *Western Union Tel. Co.,* 212 Ala. 271 (102 South. 376); *Western Union Tel. Co.* v. *Myers,* 80 Ind. App. 376 (141 N. E. 85); *Western Union Tel. Co.* v. *Schade,* 137 Tenn. 214 (192 S. W. 924); *Western Union Tel. Co.* v. *Lee,* 174 Ky. 210 (192 S. W. 70, Ann. Cas. 1918C, 1026, and note).

■ The action sounds in tort (*Western Union Tel. Co.* v. *Brown,* 234 U. S. 542 (58 L. Ed. 1457, 34 Sup. Ct. Rep. 955), and is predicated on the breach of a public duty. While the contract to pay this money was between Pete Edd and the defendant company, it was for the benefit of the plaintiff and,

by reason thereof, he is permitted to sue. In determining the measure of damages many courts stress the distinction between an action brought by the sender and one brought by the addressee of the telegram. If brought by the sender, it is an action *ex contractu;* if commenced by the addressee, it is an action *ex delicto.* As a general rule the measure of recovery for breach of contract is more restricted than where the action sounds in tort. However, whether in the instant case the action be *ex contractu* or *ex delicto,* we take it that the damages must be the proximate result of the wrongful act of the defendant.

It is urged by defendant that plaintiff's loss of his auto and his failure to secure employment were not within the contemplation of the parties to the contract to transmit this money and neither could the defendant have reasonably anticipated that such a result would follow. Reliance is had on the old English case of *Hadley* v. *Baxendale,* 9 Ex. 341, which has met with the universal approval of state and federal courts, wherein the rule is thus stated:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally— i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably con-

template, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

Counsel for plaintiff do not question the rule above stated as applied to actions commenced by the sender of telegraphic messages, but say it has no application to one sounding in tort and which is brought by the addressee. At this juncture it is well to state that there is nothing in the record from which an inference could be drawn that the defendant company could have reasonably anticipated that plaintiff would sustain the damages alleged. If the rule applicable is as stated in *Hadley* v. *Baxendale, supra,* it is clear that there can be no recovery. In discussing the question of proximate cause, the United States Supreme Court, in an action in tort (*Milwaukee etc. R. Co.* v. *Kellogg,* 94 U. S. 469 (24 L. Ed. 256), said:

"The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury. It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence

of the negligence or wrongful act, and that it ought to have been foreseen in the light of attending circumstances."

While there is some conflict in the federal courts, we think the true rule as to the measure of damages in this class of cases is the same, whether it be considered sounding in contract or in tort, i. e., the plaintiff can recover only such damages as could reasonably have been anticipated would follow as a result of its wrongful act. The damages must be the direct, natural and proximate result of defendant's negligence. The "contemplation of parties rule" applies when the tort grows out of the contract. Indeed, plaintiff could not maintain this action without the existence of the contract which his brother made with the telegraph company. If it be said that his right to sue is predicated upon the breach of a public duty, we are reminded that the sender of the telegram might with equal propriety complain. Upon reason and principle it seems to us that the sender of a telegram should not be more restricted in his right to recover damages than the party for whose benefit the contract was made. To hold otherwise would be to place form above substance. As stated in *Fererro* v. *Western Union Tel. Co.*, 9 App. D. C. 455 (35 L. R. A. 548):

"Wherever, then, the action sounds in tort for negligence in the performance of a duty, unattended by circumstances showing evil intent, oppression, or wanton disregard of another's rights, and is, as in this case, founded on a contract which raised the duty, though that contract was made with another person, the measure of damages must be regarded as practically the same as if the action were for the breach of the contract under the same circumstances."

In Sedgwick on Damages (9 ed.), Section 143, it is said:

"Where, however, an action, though in form based on a tort, really amounts to an action for breach of a contract, the rule in this respect is the same as in case of breach of contract; * * ."

This court in *Frazier* v. *Western Union Tel. Co.*, 45 Or. 414 (78 Pac. 330, 2 Ann. Cas. 396, 67 L. R. A. 319), seems to have recognized the principle which we contend is sound, as it was therein said:

"But the right of an addressee to recover is necessarily grounded upon the contract between the company and the sender, whether the action be in form technically for a breach of contract or one sounding in tort."

■ Let us now turn to the facts of the case. Plaintiff agreed to purchase the Buick automobile for $1,985. He paid $635 in cash and agreed to pay the balance in twelve monthly installments of $112.50. After making eight monthly payments he became in default and thereupon telegraphed his brother for financial assistance. We take it from what has been said in the briefs that this automobile was purchased under a conditional sales contract where the title was reserved in the seller. If it be true that plaintiff was in default before telegraphing to his brother, what assurance is there that the seller would not have repossessed this car even though the defendant company had tendered plaintiff the amount due him? Can we assume that the seller would have waived this breach of the contract on the part of the plaintiff? Furthermore, what if plaintiff had received the money and had paid the amount due on the two monthly installments? Can it be said with any degree of certainty that he would have

been able to pay the other installments when due? After all, whether plaintiff would have been able to prevent the loss of his automobile depends upon many uncertain, speculative and remote contingencies. Its loss was not the natural and probable consequence of the failure of the defendant to transmit this money to him.

The mere statement of the second cause of action as alleged shows the special damages claimed to be entirely too uncertain, speculative and remote. No cause of action was alleged and the trial court was unquestionably correct in sustaining the objection to the introduction of any testimony. We pass that phase of the case without further comment.

■ While there was a technical violation of plaintiff's rights and, by reason thereof, he would be entitled to at least nominal damages, this court is not justified in reversing and remanding the cause for another trial: *City of Rainier* v. *Masters,* 79 Or. 534 (154 Pac. 426, 155 Pac. 1197, L. R. A. 1916E, 1175).

The judgment of the lower court is affirmed.

AFFIRMED.

RAND, C. J., and BEAN and BROWN, JJ., concur.